Good morning. Good morning, Your Honor. May it please the Court, my name is David Copley. I'm counsel for Mike Taylor in the class, and I'm here with my court counsels Mark Sampson and Ryan McDevitt today. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. This case presents unusual facts. AutoZone uses a labor model in its stores that is designed to use store manager overtime as an essential source of unpaid manual labor. This is not disputed. It's in the Lewis Declaration. It's in multiple documents. AutoZone never challenges that issue. So the critical question, I think, for this Court is, given that distinguishing fact, does that influence how you look at all the other facts in the case? Because when you look at the totality of the evidence, the totality of the job, the job as a whole, we think that there is strong evidence to support the fact that there is the exemption does not apply under the FLSA. Here, we believe the district court made some fundamental errors in looking at the evidence, and that's why we have this appeal. Your Honor, I'd like to focus on the primary duty issue, because that's really the other issue. Let me interrupt you for just a minute. I want to have a context here. Yes. Is it your position that ultimately this issue should be decided by a jury? That's a really good question, Your Honor. Thank you. Under the FLSA, as you know, there is a sort of a two-step process. When a motion for summary judgment is brought, it is the function of the court to look at the undisputed facts, to take all the evidence in favor of the nonmoving party, to take all inferences in favor of the nonmoving party, and then if those undisputed facts and inferences lead to only one possible legal conclusion, then it's appropriate for the court to enter summary judgment based on the legal finding of exemption. If the facts are not so clear, then it is a question for the jury. So here, you say it's a question for the jury? Absolutely, Your Honor. There's evidence on both sides of almost every factual question in the record, and when the evidence is that disparate, the judge on the other side of the question is not so sure. Let me, I mean, are there, maybe pinpoint a couple of what you think are the disputes. I mean, I agree that you guys have competing versions of, you know, which fact should be given more weight, perhaps, but I didn't – what are the facts that are actually in dispute that a jury would need to resolve? The – Is there a dispute, for example, over what percentage of time these store managers spend on managerial versus nonmanagerial tasks? There is a minor dispute about that, but it's not really contested. Right. Store managers use – That's what I'm saying. Yeah. I think what Judge Lynn maybe is alluding to is that we look at this record, and it doesn't seem like there are a whole lot of factual disputes. There are arguments about what inferences should be drawn from those facts and applying the standard that the regs give us, which is what the right outcome is. But maybe you can pinpoint, okay, what – so what are the actual factual disputes that you think a jury would have to resolve? Well, some of the fact – let me think of one example, Your Honor. There is a – again, I'm not sure if this is disputed or not, but let me tell you what I'm thinking here. Plaintiff presented evidence that stores operate perfectly fine whether a store manager is there or not. On the other hand, Autozone argues that chaos would ensue if an exempt store manager isn't there on a daily basis on site to make these managerial decisions. They have some evidence on their side on that point. We have some evidence on our side on that point. That is the kind of factual dispute that a jury might need to resolve. Okay. That's one example. I assume you must have others. There are others. And with all due respect, Your Honor, we can get into the sort of the nitty-gritty of the facts here, but I think that there's a larger problem in the case, as you alluded to earlier, which is not only did the judge, you know, cherry-pick the evidence. Basically, looking at some evidence is more important than other evidence in the case. The judge drew adverse inferences based on the evidence that he considered. And honestly, the judge made some outright assumptions that are not supported anywhere in the record. And so it's not whether a particular fact – this case is not going to turn on a particular fact. The primary duty test is a facts and circumstances test. You need to look at the job as a whole. You need to look at the context. You need to look at the cumulative effect of the evidence. And so one little thing is not going to persuade a jury. It's not going to persuade this Court. What you need to look at and what the jury needs to look at ultimately is the big picture. And that's what I would like to address my comments to this morning. If I – I don't want to tap dance around your question. No, that's fine. Okay. Under the primary duty test – well, first let me go back to this. This case is an – it's an FLSA case. That's where we need to start. FLSA says that everybody gets paid overtime if they work more than 40 hours unless there's an exemption. And Congress carved out a handful of very specific exemptions. The one that matters in this case is the bona fide executive exemption. And again, the statute and the regulations are very clear. To determine if someone is a bona fide executive, their primary duty has to be the management of the enterprise. If AutoZone doesn't approve that, they cannot carry the burden of proof on their exemption and they are not entitled to summary judgment. So then in deciding what the primary duty is, again, the regulations tell you how to analyze that. It's a complete facts and circumstances test. You look at the job as a whole. And the regulations articulate some things that are important to consider, such as the relative importance of the exempt versus non-exempt tasks, the amount of time spent on exempt versus non-exempt tasks, the relative freedom from direct supervision, and the relationship between the employee's salary and the exempt person's wage. No, we're well familiar now. Okay. We weren't before with each of those, because the regs are very, very clear on what needs to be taken into account. Absolutely. But it just, you know, I mean, you're what you want us to be persuaded of is that there are on each of those points, or at least enough of them to make a difference, that there are factual disputes that you'd actually need to bring in a jury to resolve. Right. To me, you can sort of say, well, let's look at the big picture, and I don't want to talk about specifics, but I'm not sure how are we supposed to decide the case if you don't pinpoint us to the specific factual disputes that you say warrant a jury trial. Okay. Your Honor, let me give you three sort of groups of specific facts where we believe the district judge made a mistake. The first place where we think he misstepped is that he ignored some of the evidence in the record that if credited would support plaintiff's argument that the primary duty is not management. And in particular, what does AutoZone say the primary duty of its store managers are? In the declaration of Mr. Lewis, a former senior AutoZone executive, he says the most important job duty, without question, was direct customer service. He says that AutoZone's core business strategy was based on using the manual labor of the store managers, not their managerial skill. They needed to squeeze the unpaid overtime out of the store managers in order to make the dollars work. Another AutoZone document says that the AutoZoner's primary job is the one he or she does most of the time. That's common sense. That's an AutoZone document. AutoZone also says that most of your time as a store manager is spent waiting on customers. Yes, that's what AutoZone says. AutoZone says this is retail, and managers spend the majority of your time selling parts. What else would you be doing if you weren't on the schedule? So we know what AutoZone thinks the primary duty is. We know what the plaintiffs think the primary duty is, because there's abundant deposition and declaration evidence on that point. But Judge Martone did not credit any of that in his decision. He sort of skipped past the most obvious evidence of primary duty and looked at other considerations. The second sort of bucket of issues that we'd like to raise is the fact that Judge Martone – excuse me, Your Honor. Excuse me. Roberts. Instead of looking at the job as a whole and the complete facts and circumstances test, Judge Martone basically did the opposite. He atomized the facts rather than look at them on a cumulative basis. And again, we put this in our brief, and I know you're well familiar with the briefs. But with the judge, instead of looking at the evidence that would favor a finding of non-exemption, the judge basically discounted each of those. He said, well, sure, you do a substantial amount of manual labor, but that's not dispositive. You spend most of your time doing manual labor, but that's not dispositive. You have no discretion, but that's not dispositive. You're closely supervised by your district manager, but that's not dispositive. Well, he's right. None of those are dispositive. It's a complete facts and circumstances test. So it's not good enough to say that these are not dispositive. We never claimed that they were. But you look at all the facts and circumstances in the context of this labor model, which is designed to extract unpaid overtime from the store managers, and everything falls into place, and there's certainly enough evidence in the record from which a finder of fact could determine that the exemption does not apply. And then the third bucket of evidence I wanted to talk about, Your Honor, is the district court's unfounded assumptions. The district court does not say this, but he seems to assume that under the FLSA, it's necessary to have an on-site exempt employee, you know, running the store. Of course, that's not in the statute. The statute doesn't – under the statute and the regulations, in theory, you could have, you know, a store full of executives or a store full of non-executives, because the question is, do they meet the criteria of the regulation? It's not whether a store actually needs somebody with a different colored shirt. On page 10 of the district court's decision, the judge makes some – goes out on a limb, frankly. He says, if store managers did not perform their assigned managerial tasks, candidates would not be interviewed. There's no evidence for that. There's no citation to the record. In fact, we know that district managers interviewed candidates and that assistant managers interviewed candidates. The judge goes on to say that employees may skip out on training. Well, that might happen, but that's a guess. Daily tasks might slip through the cracks. That's a bald assumption. And employee performance appraisals would sit untouched. Again, there's no cite to the record for that, because it's not in the record. If the store manager didn't do the employee appraisal, the district manager could do it. The assistant manager could do it. The part sales manager did it – could do it. This is not rocket science, and there's no reason that – that there's nothing magic about a store manager doing these tasks that is going to elevate him or her into the bona fide executive category just because it's an item on their checklist. You need to look at the entire picture. Alito, you are down to 2 minutes and 20 seconds. You're welcome to keep using it, but I just want to give you a little bit of a break. Let me just finish one last point, Your Honor, and then I'll reserve whatever little time I may have left. The – as I just discussed, the – the AutoZone assumes, and the district court appeared to assume, that chaos would ensue unless you need – unless there was an exempt employee on site in every location. Of course, we know that there's extensive evidence in the record, undisputed, of district manager involvement in the individual stores on an almost daily basis in many cases. And we also know that chaos did not ensue because a few years ago, AutoZone reclassified its store managers in California from exempt to non-exempt. So folks in California, store managers, are earning an hourly wage, they're getting overtime if they work overtime, and there's no chaos. It's perfect – it works perfectly fine to pay your employees fairly. According to the FLSA, it's not going to blow up the system. It's just a matter of applying the criteria of the regulation to the specific facts of this case. Okay? I have one question about that you can answer in your rebuttal. Did the judge find that there would be chaos? I don't remember any finding like that. He did not use the word chaos, Your Honor. Or anything like that. When you come back up, if you'd point that out to me. Of course. We'll hear from counsel for the defendants. Good morning, Your Honors. My name is Andrew Voss. I'm here this morning to speak on behalf of the AutoZone defendants in support of Judge Martone's order granting summary judgment under the executive exemption to the FLSA as applied to the store managers who have chosen to sue AutoZone seeking overtime. Your Honor, Judge Wofford, you identified the question, which is this is a summary judgment order. And in order to vacate Judge Martone's order, we have to find a genuine issue of material fact. Or we could just conclude that he erred as a matter of law. I mean, the plaintiffs didn't cross-move for summary judgment, I guess, is that? They did not, Your Honor. Okay, but that doesn't mean that just because there aren't any factual disputes, you win if, in fact, the judge made the wrong call based on the undisputed evidence that was brought. Exactly, Your Honor. And so this court would have to find, based on that undisputed record as to what these store managers are responsible for in the documents themselves, and based on what they actually testify that they did, and based on how AutoZone evaluated their performance in terms of assessing whether they're achieving the employer's expectations in their store manager role, whether the judge did, in fact, accurately apply the law. Because really what we're talking about in that sense is an application of the law. Whether this – whether, based on that record, the primary duty satisfied the duties test in – under the exemption. Yeah. Well, and so let me just tell you, from where I'm coming from, it seems to me that the primary duty – I mean, it seems like their primary duty is non-managerial customer relations-type work. So maybe you can just address head-on why – forget about factual disputes, but just why you think this record compels a victory for you. Certainly, Your Honor, the question is whether management is the primary duty, because that's what the exemption requires. And the case law in this circuit, and virtually every circuit that has addressed that issue, is regardless of whether a store manager in a retail setting spends the most of his or her time engaged in customer service – for example, Ms. Grace in the Family Dollar case testified she spent 99 percent of her time servicing customers. The question, rather, is using the factors that are prescribed by the Department of Labor and the regulations, what is the most important thing that the store managers are responsible for doing? And so you look at the – as counsel identified, you look at all the circumstances. And what – and as the cases describe, a store manager, first and foremost, is to ensure that the store is operating the right way. That is, first and foremost, to ensure that the assets are protected, that customers are protected, that we have someone there who's responsible to respond to emergencies, who's responsible for managing staff, directing staff, managing all those functions that you need to ensure are operating properly in order to have a retail operation succeed. And so this isn't – it's not a matter of how much time is spent. The case law is very clear in this circuit and every other circuit that, as counsel indicated, that's not dispositive. So what is – what is it, based on the documentation, they're supposed to be doing? Well, they're managing not only people in the store, between 7 and 10 employees, they're also managing functions, inventory, merchandising, merchandise flow, staffing, interviewing, all those things. And quite frankly, if we didn't have – did not have someone in those stores managing those functions, then the store would not work. We wouldn't achieve corporate goals relative to profits, relative to customer service, all those types of things. Maybe you can address counsel's point about the situation here, your stores here in California. Your Honor, there's a different test that applies in California, clearly. Oh, I know. And so based on that separate test, you actually do have to quantify how much time the employee to which you're going to apply a state-based exemption is engaged in specific activities. It's a very different test under the Fair Labor Standards Act. And as met – as virtually every retailer that I'm aware of, that I work with here in California, they apply a different assessment of how much time the employee engages in specific activities to determine whether the exemption applies. And so that's certainly a reasonable conclusion to make. That doesn't necessarily mean that those store managers here in California wouldn't qualify for the executive exemption under the FLSA. But because a different standard applies, you have to consider those state law obligations when you're determining your wage and hour compliance program. So – and then you look at, well, what are the other factors that we consider to determine what's the most important duty? You're looking at, well, are they relatively free from supervision? All right. Well, what evidence do we have in this record based on all the circumstances that Judge Martone considered to determine whether these store managers are closely supervised? But let's just start with the fact that they don't even seem to have control over their schedule. That just seems pretty – Well, Your Honor, what they have – and this is a key issue. And it's a key issue for every retailer. Because as you move into a world of engineered labor costs, what the store managers receive are a certain number of hours. All right? And they need to allocate those hours when they're putting together a schedule. And what they testify to is the computer will put the schedule together based on the number of hours that are precisely engineered based on all the various specific activities that have to occur in the store. How many customers does the metrics determine are going to be visiting that AutoZone store on this particular day at this particular time? What kind of merchandise flow do we have going through the store at this particular time? What's the – see all kinds of various precisely engineered standards. Now, the computer will tell you how many hours. None of which sounds like it has to do with managing the enterprise. Well, Your Honor, what you have to do is take those – because they are judged, they are evaluated very closely on how they manage that labor budget. That's the most expensive input in running these stores. So they have to manage to those targets. And they are evaluated negatively if they don't manage that labor budget. That is a very significant managerial role that every store manager – and certainly I understand, because over the past couple years, those labor budgets have become tighter and tighter as stores increase in their use of technology and there's increased pressure to achieve profit goals. And I certainly understand store manager frustration with respect to achieving those goals, but it is certainly a managerial job to manage that labor in consideration of the skills, talents, and availability of your employees in your retail environment. So that clear – managing that scheduling issue and that labor budget is – What about the fact that the district managers seem to micromanage? Do they micromanage, Your Honor? We heard a lot during discovery in this case about managing by text. I don't even understand how that would conceivably work. First of all, as Mr. Montoya testified, they're not supposed to be using their cell phones when they're in the store, and that makes complete sense. If you're managing a retail operation, you shouldn't be texting on your phone. So I don't even understand that. It's certainly undisputed that the district managers who will have 10 to 12 stores, often in multiple states, have conference calls every morning with all of their store managers to understand where are we, guys? Where are our targets? Where are we achieving? Where are we not achieving? What can we do better? You, Ms. Glover-Hale, what's working for you? Mr. Montoya, what's working for you? So you have those conference calls every day. The testimony in terms of how much personal attention, that is, in-store attention these store managers get from the district managers, is understandably and reasonably all of the board. Ms. Glover-Hale testified that she saw her district manager a couple times every six months. Other store managers, if they're struggling, they may get a little bit more attention from their district manager. That's certainly not disputed. But do we have, in this record, a type of direct, over-the-shoulder direct supervision that the circuit courts, whether it's the Burger King or Stuckey's or Family Dollar or this court's decision in Baldwin v. Trailer Inns, do we see that over-the-shoulder direct supervision? Your Honor, we certainly do not. It simply is not possible for a district manager to manage these types of, I mean, these are active, busy retail operations scattered across metro areas or, in many cases, multiple states. So there's no evidence. And I think Judge Martone reasonably recognized, as he indicated in his decision, that there's no evidence in this record that these store managers were directly supervised in a way that would take them outside of the executive exemption. No reasonable jury could find that. Those were undisputed facts. We applied the law to those undisputed facts, and there's no jury question. And so then, finally, what do we, the final factor that the Department of Labor, under these circumstances, asks the courts to look at is, well, how do you compare this exempt manager's salary with the salary that we're paying for customer service work, basically? And the record establishes that our customer service associates, our red shirts, typically start around $8 an hour. We have non-exempt part sales managers and assistant store managers that make between $12 and $14 an hour. The record evidences that these store managers made between $800 and $1,000 a week. So there's a lot of mathematical... Do you think that there's a factual dispute on this particular issue? No, there's no factual dispute. Well, because if there isn't, I would say it cuts against you. Because as I understand it, if you factor in all of the extra hours these store managers put in, on an hourly basis, they really are. Your Honor, they're exempt employees. They're not paid by the hour. They're paid by their salary. Right. And if you add up, just like you, you know, as a lawyer, if you add up all the hours you put in, in a year, and divide it by the amount you're getting paid in salary, on an hourly basis, they're making basically the same amount as these other people. The regulations don't direct the courts to engage in a regular rate analysis in terms of what these people were making per hour. Because if any week, during any week where they didn't work a full 40 hours a week, they still got their same salary. That's simply not how you would compare how much do we pay for managerial work versus how much do we pay for non-exempt customer service. A non-exempt customer service registered employee in an AutoZone store makes about between $350 and $400 a week. The managerial skills for which we pay our store managers $800 to $1,000 a week, we pay double that. There must be something that we value that are provided by store managers in excess of the customer service work that they do, which I certainly concede. You have store managers that are servicing our customers. That is absolutely what our store, what everyone in the store is doing. And we have a store manager that's making sure that our red shirts are meeting those standards that are, well, there's a lot of acronyms in this record. I don't know if those were all clear to the court. But that they're engaging in, they're upselling on Whittager. And they are, that they're making sure that our customers know that this is where they need to come for auto parts. Well, but Mr. Lewis, through his testimony, is saying that there's, in effect, a scheme here to load up the same kind of work that your other employees do on these store managers. And therefore, we should consider how many hours they're working. Because they're doing the kind of work that is not exempt. There's no dispute in this record that store managers engage in non-exempt work, that they perform customer service. Yes, but how much? That's material to determining the overall nature of their work. And that's why it's not foolish to compare this on an hourly basis, because they spend so many hours in the store doing non-exempt work. Why is that a flawed analysis? Well, as to the comparison of the hours worked versus and calculating a regular rate to basically condense their salary into an hourly rate and make that comparison, well, Your Honor, even if you do that math, at the average hours that these individuals say they work, which was around 50 hours a week, the math still comes out to, I believe, our calculation was about a 20% increase over what the part sales managers and the assistant store managers are making on an hourly basis. And that doesn't take into account that these store managers are also eligible for bonuses, significant bonuses, uncapped bonuses based on store profitability. So Mr. Montoya earned over $8,000 as a performance bonus during one of his years. So that, if you engage in this regular rate analysis, would be incorporated into their total compensation to determine what that regular rate is for comparison purposes. Then you exceed a 30% increase in terms of what we pay our store managers in comparison to what we pay our assistant store managers and our part sales managers. And again, I submit to the Court that what the plaintiffs are saying is they're really just paying me for customer service. And we pay $8 an hour for customer service, and that's significantly less. So based on that, in consideration of that factor, as well as what's most important, and that clearly, the case law, you look at all these convenience store cases that were determined over the course of the last decade, and this Court's decision in Baldwin, where it certainly was undisputed in that record that Mr. and Mrs. Baldwin spent a whole lot of time maintaining that trailer park. There was only two other employees, two other assistant managers. That was it. And so they were it in terms of managing this facility. And based on the record in this Court's decision in Baldwin, that was a much less complicated environment in terms of what actually had to get done, in terms of merchandise flow. And how about, though, maybe a case that's a little bit more closely on point to ours, the Morgan case from the 11th Circuit? Well, Your Honor, Morgan was decided on a much different factual record. That was a trial record. And the 11th Circuit determined that case on appeal using a much different standard. The case that's much more applicable is Grace, Henry Family Dollar, that was decided by the 4th Circuit against the same employer. And — Why do you think the standard applied by the 11th Circuit is different from what we're trying to figure out here? Well, this is a motion for summary judgment, Your Honor. Right. And was that decided as a matter — a motion for judgment as a matter of law? And the Court determined that — A standard. Your Honor — I would say that the factual record is different. I'm open to hearing that. But I don't think there's a different legal standard that was being applied. Well, the — well, what the Court determined, that there — that there was no evidence — there was sufficient evidence to support the jury's verdict in that case. And they had the entire trial record. I'm not — as the — as the Grace court indicated in the 4th Circuit, they didn't have the entire trial record. I don't know what was submitted to the jury. I don't know what was submitted to — and on the basis of that record, what the — how the jury came out in that case. I know that when the — the record was submitted to the 4th Circuit in the Grace case, and Ms. Grace testified that she spent 99 percent of her time servicing customers, the 4th Circuit had no problem sustaining a summary judgment order on — in very similar circumstances, where you have a small — actually, a lot smaller than an AutoZone store, where you only have three or four other employees, where the customer base is very different from the customer base at an AutoZone store, and a much different type — much different type of operation, where — and the Court had no difficulty determining that, look, Ms. Grace, she was the only one in the store. And if anything happened, it was on her. Just like Mr. Montoya testified, just like Ms. Glover-Hale testified, every — everything in the store was their responsibility. And a major national retailer, we need to make sure that we have someone in the store who is responsible. Not only entitled, we're not just saying the exemption applies because you're in charge, but because they are actually in charge, actually in charge. Thank you. Roberts. All right. Thank you, counsel. I think you have a little bit of time left for rebuttal. Thank you, Your Honor. To start with Judge Lynn's question, the district court did not use the word chaos. And so I think he was leaning that direction based on AutoZone's argument, because he repeatedly emphasized the fact that the store manager was the most senior person at the site. So to me, the logic of that is if that person wasn't there, chaos would ensue. But that's — that's me connecting the dots. The judge did not say that. The judge did say that if the store managers did not perform their assigned managerial tasks, all these important things would simply never happen. And he said that on page 10 of his decision, ER page 10. And again, the implication there, I think very clearly, is that the wheels would grind to a halt if the store manager was reclassified. I want to just mention a couple of record sites that I think are relevant to the questions you raised with opposing counsel. There is evidence in this record of micromanagement. I would draw your attention to ER 336 through 39. And there's also evidence in this record that store managers have no control — little control over their own schedule. At ER 36, the evidence says that store managers are told to do inventory at 5 a.m. as directed. So the store tells them, you've got to come in early, get this done before the customers show up. Fair enough, but that — when you take away their discretion and you micromanage them like that, they look less and less like an executive. At ER 35, AutoZone tells store managers that all employees must do customer service between 11 a.m. and 7 p.m. In other words, you're not doing your management stuff. Between 11 and 7, you're on deck dealing with the customers, and again, that's fine. You can run your business that way, but when you take that discretion away from the store manager, he or she looks much and much like — much and much less like a true executive. In terms of the salary calculations, I think that's been fully addressed in the briefing. And so I won't bore you with the numbers again, but if you look at it on an apples-to-apples basis, the store managers, even with a bonus counted in, earn between $12 and $18 an hour. Assistant store managers, with their overtime, earn between $13 and $16 an hour. Part-sales managers, without overtime or a bonus, earn between $10 and $14 an hour. I was going to say, you're over your rebuttal time, but it will give you time to make one last point if you have something else you want to address. I would like to make one last point, Your Honor, but it's going to take me about 30 seconds. If you'll indulge me. I — none of us have had a chance to talk yet today about concurrent duties, and that is an issue that I think is confusing sometimes, and so I just want to wave a flag on that issue. Concurrent duties doctrine is a — it's a one-way valve. It's not a get-out-of-free card. In order — before you even look at concurrent duties, you need to determine what the primary duty of the employee is, and if you determine that the primary duty of the employee is management of an enterprise, then concurrent duties allows — gives them permission to spend time doing manual tasks. It doesn't work the other way around. If your primary duty is customer service, concurrent duties does not give you permission to do management tasks and — and suddenly can bring you into an executive against your will, even though your primary duty might be something else. So that is the — that is the primary consideration. Okay. Counsel, thank you for the arguments on both sides. The case just argued will stand submitted.
judges: Lynn, Noonan, Watford